IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| TRANSCORP, INC., | ) | |
| | ) | Case No. CV-07-453-S-BLW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION** |
| v. | ) | **AND ORDER** |
| | ) | |
| NORTHLAND INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it Defendant's Motion for Summary Judgment (Docket No. 12) and Defendant's Motion to Strike (Docket No. 32).  The Court heard oral argument on the motions on August 21, 2008, and now issues the following decision.

## BACKGROUND

Tony Alexander, an over-the-road truck driver, leased a 2005 Freightliner Tractor (the "Tractor") from Transcorp, Inc. ("Transcorp") in April 2005. Alexander obtained an insurance policy from Northland Insurance Company ("Northland") for that Tractor with a policy period of April 29, 2005 to January 14, 2006.  Alexander also had Transcorp named as an additional insured/loss payee on

**Memorandum Decision and Order – 1**

the Northland policy.  Alexander renewed the insurance policy with Northland for the policy year January 14, 2006 to January 14, 2007.  Although a clerical error left Transcorp off the renewal policy, that error was eventually corrected, Transcorp was retroactively added to the policy, and Northland does not dispute that Transcorp was covered by the policy through January 14, 2007.

In late 2006, Alexander became dissatisfied with the Tractor and abandoned it on or about December 29, 2006 by parking it at the Gem Stop Truck Stop in Nampa, Idaho.  He did not renew the insurance coverage with Northland, which ended on January 14, 2007.  At some point, the tractor was apparently stolen from the truck stop.  Transcorp then submitted a claim to Northland for the value of the Tractor.  Northland denied the claim, indicating that the Tractor was stolen after the insurance policy had lapsed.  Transcorp then filed this lawsuit.

## ANALYSIS

### I.    Motion to Strike

Northland asks the Court to strike portions of the Graham Affidavit which do not comply with the requirements of Rule 56(e).  Specifically, Northland argues that the exhibits lack foundation and/or contain inadmissible hearsay.

With respect to Exhibit B, a copy of a Nampa Police Department Report, the Court agrees with Northland's assertion that Mr. Graham has no ability to testify to

its accuracy, and that it contains multiple levels of hearsay because the report is
based on narrative from others who were not present.  F.R.C.P. 801(c), 901(a),
602.  Specifically, Mr. Graham states: "I received a phone call from Rick Mank, an
Investigator with Travelers Insurance.  He advised me that Tony Alexander had
filed a claim on the loss of the truck stating that it was stolen in December before
the insurance policy was cancelled."  (Graham Aff., Ex. B).  This quote essentially
contains a statement made by the police officer, reporting a statement made by Mr.
Mank to the police officer that Mr. Alexander had stated that the truck was stolen
in December.   Thus, the affidavit contains three levels of potential hearsay.

Although the police officer's statement may be admissible under F.R.C.P.
803(8), and Mr. Mank's statement may be non-hearsay as an admission of a party
opponent under 801(d)(2), the third statement by Mr. Alexander is clearly hearsay,
not subject to any exception.  Such testimony may be offered as impeachment
under cross-examination, but a prior, unsworn, inconsistent statement, is otherwise
hearsay, even when included in a police report.  _U.S. v. Canales-Fuentes_, 176
Fed.Appx. 873 (9th Cir. 2006).  Accordingly, the Court will strike the statement.

As for Exhibit C, which is a copy of Alexander's Voluntary Petition for
Bankruptcy, the Court also agrees with Northland's assertion that it is inadmissible
because no proper foundation has been laid and the document lacks any type of

**Memorandum Decision and Order – 3**

indication that it was ever filed with a court.  Therefore, it was not certified as

authentic as required by F.R.C.P. 902(4).

Moreover, the exhibit includes embedded hearsay.  At common law a

witness could be impeached on a non-collateral matter by extrinsic proof that he

made a statement out of court inconsistent with his in court testimony.  However,

the statement was considered hearsay and hence was not admitted as substantive

evidence but rather was limited solely to its impeaching effect upon the credibility

of the witness.  Rule 801(d)(1)(A) altered the common law by allowing a prior

statement of a declarant who testifies at trial and is subject to cross-examination

concerning the statement, if the statement is inconsistent with his testimony, and

was given under oath, subject to the penalty of perjury at a trial, hearing, or other

proceeding, or in a deposition.  *Pope v. Savings Bank of Puget Sound*, 850 F.2d

1345, 1356 (9th Cir. 1988); *United States v. Castro-Ayon*, 537 F.2d 1055, 1057-58

(9th Cir. 1976); see also 30B Wright & Miller § 7011.

Here, even under the altered state of the law, the statement in the bankruptcy

petition is inadmissible because it was not given under oath, and it was not subject

to cross-examination.  Thus it is not admissible as substantive evidence under Rule

801(d)(1)(A).  Accordingly, the Court will exclude the testimony.

Exhibit D, a copy of a May 1, 2007 letter from Sunbridge Capital's counsel

**Memorandum Decision and Order – 4**

to Northland, likewise lacks foundation.  F.R.C.P. 602, 901(a).  Additionally, there

is no indication of where the author of the letter obtained the information contained

in the letter.  Moreover, the author of the letter himself suggests a lack of

knowledge by stating that "it is our understanding" and "as far as we know," with

respect to the pertinent information.  The letter simply contains no evidence

supporting an assertion that the theft was discovered on January 12, 2007.

Therefore, the Court will strike the testimony.

Finally, with respect to Exhibit E, which is a copy of a transcript from the

interview of Mr. Alexander, the exhibit also lacks foundation and is inadmissible

hearsay.  F.R.C.P. 801(c), 901(a), 602.  There is no identification of how the

transcription occurred, who transcribed it, or whether it accurately captures

the actual interview.  Moreover, as unsworn prior testimony, it is clearly hearsay.

Again, it may be used to impeach Mr. Alexander's testimony at trial, but it is not

admissible as substantive testimony.  Therefore, the Court will strike the testimony.

Only admissible evidence may be considered in ruling on a motion for

summary judgment.  *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir.2002);

*see also* Fed.R.Civ.P. 56(e).  "[D]ocuments which have not had a proper

foundation laid to authenticate them cannot support a motion for summary

judgment."  *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th

**Memorandum Decision and Order – 5**

Cir.1988).  Authentication, required by Federal Rule of Evidence 901(a), is not

satisfied simply by attaching a document to an affidavit.  *Id.*  As discussed above,

Transcorp has not met its burden with respect to the above evidence.  Accordingly,

the Court will grant the motion to strike in full.

## II.    Summary Judgment Standard of Review

One of the principal purposes of the summary judgment "is to isolate and

dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the

"principal tool[ ] by which factually insufficient claims or defenses [can] be

isolated and prevented from going to trial with the attendant unwarranted

consumption of public and private resources."  *Id.* at 327.  "[T]he mere existence of

some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be

no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving

party, *id.* at 255, and the Court must not make credibility findings.  *Id.*  Direct

testimony of the non-movant must be believed, however implausible.  *Leslie v.*

*Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is

**Memorandum Decision and Order – 6**

not required to adopt unreasonable inferences from circumstantial evidence.

*McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

## III.    Defendant's Motion for Summary Judgment

There is no dispute that Tony Alexander leased the Tractor from Transcorp. There is likewise no dispute that Alexander obtained an insurance policy from Northland for the Tractor, and that he named Transcorp as an additional insured/loss payee on the insurance policy. It is also undisputed that the policy began on April 29, 2005, and, after renewal, continued through January 14, 2007.

**Memorandum Decision and Order – 7**

Northland contends that it is entitled to summary judgment because the Tractor was stolen after the insurance policy lapsed on January 14, 2007.  In support of this assertion, Northland offers the affidavits of Alexander and his significant other, Linda Stevens.  In his affidavit, Alexander states that he drove past the Tractor once or twice a week at the truck stop, and that it was there from December 29, 2006 to March 1, 2007.  (Alexander Aff., ¶ 8).  Stevens states that she went to the truck stop and took the license plates off the Tractor on March 1, 2007.  She further states that the Tractor was at the truck stop until March 15, 2007.  (Stevens Aff., ¶¶  6-7).  The clear inference from these statements is that the Tractor was stolen sometime after March 15, but certainly after the insurance policy lapsed on January 14, 2007.

Transcorp suggests that the Tractor was stolen before the insurance policy lapsed on January 14, 2007.  However, Transcorp offers no admissible evidence in support of this argument.  As discussed above, the Court will grant Northland's motion to strike those portions of the record which Transcorp offers in support of this argument.  Without, that evidence, there is no dispute that the Tractor was stolen sometime after the policy lapsed on January 14, 2007.  Northland had no contractual duty to cover losses which occurred after January 14, 2007, and therefore had no contractual duty to cover the loss.

**Memorandum Decision and Order – 8**

Transcorp nevertheless contends that, even if the Tractor was stolen after the insurance policy lapsed, Northland had a statutory or contractual duty to cover the loss.  Specifically, Transcorp argues that Northland had a contractual duty to notify Transcorp that Alexander had decided not to renew the insurance policy.  However, Transcorp points to nothing in the policy requiring such notice.  Moreover, Transcorp's assertion that Oregon Code § 742.706(2) places a duty on Northland to notify Transcorp that the policy had lapsed is without merit.  The statute provides that "non-renewal of a commercial liability policy shall not be effective until at least 45 days after the insured receives a written notice of non-renewal."  Oregon Code § 742.706(2).  "Non-renewal" is defined as "the refusal of an insurer to renew a policy at its expiration date."  There is no suggestion that Northland "refused" to insure the Tractor.  Instead, Alexander simply chose not to renew the policy.  Thus, under the circumstances of this case, the statute placed no duty on Northland to give Transcorp any type of notification.

Finally, Transcorp contends that, based on a standard of care in the insurance industry, Northland had a common law duty to give notice to Transcorp that the policy had lapsed.  Idaho case law does suggest that an insurer must act in good faith and not unreasonably deny payment of a valid claim.  *Roper v. State Farm Mut. Auto Ins. Co.*, 958 P.2d 1142, 1148 (Idaho 1998); *Featherstone v.*

**Memorandum Decision and Order – 9**

*Allstate Ins. Co.*, 875 P.2d 937, 940 (Idaho 1994).  However, even under this standard, the facts of this case, taken in the light most favorable to Transcorp, do not indicate bad faith on the part of Northland.  Northland did not hide the ball or otherwise act in bad faith in discontinuing coverage – Northland simply denied a claim on a policy which had lapsed because Mr. Alexander purposely and knowingly chose to let it lapse.

Accordingly, because the evidence before the Court reveals that the Tractor was stolen after the insurance policy lapsed, and because Northland owed no duty to Transcorp after the policy lapsed, the Court will grant summary judgment in favor of Northland.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that  Defendant's Motion for Summary Judgment (Docket No. 12) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that Northland's Motion to Strike (Docket No. 32) shall be, and the same is hereby, GRANTED.

**Memorandum Decision and Order – 10**

The Court will enter a separate Judgment as required by Federal Rule of

Civil Procedure 58.



DATED:  **September 10, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order – 11**